T.C. Memo. 2017-154

UNITED STATES TAX COURT

WILLIAM BON VISO AND CLARE BON VISO, Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 2502-16.                              Filed August 8, 2017.

William Bon Viso and Clare Bon Viso, pro sese.

Linette B. Angelastro, Jordan S. Musen, and Christopher J. Richmond, for
respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

VASQUEZ, Judge:  With respect to petitioners' Federal income tax for
2013, respondent determined a deficiency of $2,430.  After concessions,[1] the

---

[1]  Respondent determined that petitioners had unreported discharge of
(continued...)

[*2] issues for decision are whether petitioners: (1) must include gambling winnings of $5,060 in their gross income and (2) may use their gambling losses to offset their gambling winnings.[2]

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. Petitioners resided in Agoura Hills, California, when they filed their petition.

During 2013 petitioner husband engaged in a variety of recreational gambling activities: he bet on college and professional sports, played slot machines, and bought lottery tickets. That year petitioner husband won $5,060 on slot machines at three different casinos. That same year petitioners also sustained $6,983.25 in gambling losses.

On their joint Form 1040, U.S. Individual Income Tax Return, petitioners did not report any gambling winnings or losses for the 2013 taxable year and claimed a standard deduction of $12,200. Respondent received three Forms

---

[1](...continued)
indebtedness income. Respondent conceded this issue before trial on account of petitioners' insolvency.

[2] All section references are to the Internal Revenue Code (Code) in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

**[*3]** W-2G, Certain Gambling Winnings, reporting petitioner husband's receipt of gambling winnings as follows:

| Gambling establishment | Type of wager | Amount | Date |
| --- | --- | --- | --- |
| Gaughan South LLC d.b.a. South Point Hotel & Casino | Slot machines | $1,448 | 2/2/13 |
| LVHR Casino LLC | Slot machines | 1,600 | 2/22/13 |
| Palms Casino Resort | Slot machines | 2,012 | 3/22/13 |

On the basis of this information respondent issued a notice of deficiency in which he determined that petitioners had unreported gambling income of $5,060 for 2013. Petitioners timely petitioned this Court, and a trial was held on March 17, 2017.

OPINION

1.   Burden of Proof

As a general rule, the Commissioner's determination of a taxpayer's liability in a notice of deficiency is presumed correct, and the taxpayer bears the burden of

**[*4]** proving that the determination is incorrect.[3] Rule 142(a); <u>Welch v. Helvering</u>, 290 U.S. 111, 115 (1933).

When a case that involves unreported income is appealable to the Court of Appeals for the Ninth Circuit, as this case appears to be absent a stipulation to the contrary, <u>see</u> sec. 7482(b)(1)(A), (2), the Commissioner's determination of unreported income is entitled to a presumption of correctness only if the Commissioner first establishes "some evidentiary foundation" connecting the taxpayer with the income-producing activity, <u>see</u> <u>Weimerskirch v. Commissioner</u>, 596 F.2d 358, 361-362 (9th Cir. 1979), <u>rev'g</u> 67 T.C. 672 (1977), or demonstrating that the taxpayer actually received unreported income, <u>see</u> <u>Edwards v. Commissioner</u>, 680 F.2d 1268, 1270-1271 (9th Cir. 1982). If the Commissioner introduces some evidence that the taxpayer received unreported income, the burden of production shifts to the taxpayer, who must establish by a preponderance of the evidence that the deficiency was arbitrary or erroneous. See

---

[3] Sec. 7491(a) shifts the burden of proof to the Commissioner as to any factual issue relevant to a taxpayer's liability for tax if the taxpayer meets certain preliminary conditions. See <u>Higbee v. Commissioner</u>, 116 T.C. 438, 442-443 (2001). Petitioners do not contend that sec. 7491(a) should shift the burden here, and the record establishes that they have not satisfied that section's requirements. Consequently, petitioners bear the burden of proof as to any disputed factual issue. See Rule 142(a).

[*5] Hardy v. Commissioner, 181 F.3d 1002, 1004 (9th Cir. 1999), aff'g T.C. Memo. 1997-97.

Petitioners stipulated that during 2013 petitioner husband received gambling winnings of $5,060. Since petitioners acknowledged the receipt of gambling winnings, we find that respondent has connected them with the income-producing activity. Consequently, petitioners bear the burden of proving that respondent's determinations are arbitrary or erroneous. See id.

2.    Gambling Income

    a.    Unreported Gambling Winnings

The first issue for decision is whether petitioners must include petitioner husband's gambling winnings in their gross income for 2013. We hold that they must.

Section 61(a) defines gross income to mean all income from whatever source derived. Gambling winnings are includable in gross income. McClanahan v. United States, 292 F.2d 630, 631-632 (5th Cir. 1961). Drawing an analogy between gambling winnings and the recovery of a capital investment, this Court has held that a casual gambler's gross income from a wagering transaction should be calculated by subtracting the bets placed to produce the winnings. See Lutz v. Commissioner, T.C. Memo. 2002-89 (slot machine winnings); Hochman v.

[*6] Commissioner, T.C. Memo. 1986-24 (horse race winnings). A taxpayer who plays the slot machines recognizes a wagering gain or loss per session (i.e., at the time the taxpayer redeems his or her tokens). See Shollenberger v. Commissioner, T.C. Memo. 2009-306. It is a taxpayer's obligation to keep records of his or her income. Sec. 6001.

Petitioners have not challenged the accuracy of the gross winnings amounts reflected on the Forms W-2G.[4] Rather, petitioners argue that those amounts should be reduced by the amounts of bets they placed to produce their winnings.

Although petitioners introduced evidence of losses at another casino (in addition to lottery tickets and sporting bets), the record contains no evidence specifying how much petitioner husband bet to produce the winnings reflected on the Forms W-2G. In certain situations we may estimate the amount of a reduction in income even if the taxpayer fails to keep records, but only if the taxpayer presents sufficient evidence to establish a rational basis for making the estimate. See Cohan v. Commissioner, 39 F.2d 540, 543-544 (2d Cir. 1930); Vanicek v.

---

[4] Sec. 6201(d) provides that if a taxpayer asserts a reasonable dispute with respect to any item of income reported on an information return by a third party, the Secretary has the burden of producing reasonable and probative information concerning the deficiency in addition to the information return. Because petitioners have not asserted that the Forms W-2G are inaccurate, this provision does not apply.

**[*7]** Commissioner, 85 T.C. 731, 742-743 (1985). Since we have no basis for estimating the amounts of petitioner husband's bets, we hold that petitioners must include gambling winnings of $5,060 in their gross income.

    b.    Gambling Losses

The second issue for decision is whether petitioners may use their gambling losses to offset petitioner husband's gambling winnings.

The Code treats gambling losses in one of two ways. Taxpayers engaged in the trade or business of gambling may deduct their gambling losses against their gambling winnings "above the line" as a trade or business expense in arriving at adjusted gross income. See sec. 62(a)(1); Merkin v. Commissioner, T.C. Memo. 2008-146. In the case of taxpayers not engaged in the trade or business of gambling, gambling losses are allowable as an itemized deduction, but only to the extent of gambling winnings.[5] See sec. 165(d). If such taxpayers take the standard deduction instead of itemizing their deductions, they may not deduct any gambling losses. See Torpie v. Commissioner, T.C. Memo. 2000-168.

---

[5] In the case of a husband and wife making a joint return for the taxable year, the combined losses of the spouses from wagering transactions shall be allowed to the extent of the combined gains of the spouses from wagering transactions. Sec. 1.165-10, Income Tax Regs.

**[\*8]** Petitioners do not claim to be in the trade or business of gambling, and nothing in the record suggests otherwise. Petitioner husband testified, and we have so found, that petitioners' gambling losses exceeded their gambling winnings for 2013. However, because petitioners were not engaged in the trade or business of gambling, petitioners would have to forgo the standard deduction to deduct their gambling losses as an itemized deduction. See sec. 63(a) and (b); Torpie v. Commissioner, T.C. Memo. 2000-168. Petitioners' standard deduction, $12,200, exceeds their potential itemized deduction for gambling losses, $5,060. Thus, petitioners' election to take the standard deduction resulted in a larger deduction than if they had taken an itemized deduction for their gambling losses.[6] Because petitioners elected to take the standard deduction, we hold that they cannot take an itemized deduction for their gambling losses to offset their gambling winnings.[7] See sec. 63(a) and (b); Torpie v. Commissioner, T.C. Memo. 2000-168.

---

[6] Petitioners presented no evidence that they were entitled to other itemized deductions beyond that for their gambling losses.

[7] A taxpayer may change an election to claim the standard deduction at any time before the period of limitations has expired. Sec. 63(e); Shollenberger v. Commissioner, T.C. Memo. 2009-306, slip op. at 5 n.3. Insofar as the record shows, petitioners have not sought to change their election to claim the standard deduction. In any event, on the record before us it would not appear advantageous for them to do so.

**[*9]**   In reaching our holding, we have considered all arguments made, and to the extent not mentioned, we consider them irrelevant, moot, or without merit.[8]

To reflect the foregoing,

Decision will be entered under

Rule 155.

---

[8]   Petitioners contend that they are entitled to gambling loss deductions for 2013 because respondent allowed similar deductions for 2009 and 2012 even though petitioners did not itemize their gambling losses.  However, each tax year stands on its own and must be separately considered.  See United States v. Skelly Oil Co., 394 U.S. 678, 684 (1969).  Respondent is not bound for any given year to allow the same treatment permitted for a previous year.  See, e.g., Lerch v. Commissioner, 877 F.2d 624, 627 n.6 (7th Cir. 1989), aff'g T.C. Memo. 1987-295; Pekar v. Commissioner, 113 T.C. 158, 166 (1999).